# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Nested Bean, Inc.,

                     Plaintiff,

    v.

U.S. Consumer Product Safety
Commission, *et al.*,

                    Defendants.

Case No. 1:25-cv-00389-RGA

## Memorandum in Support of
## Defendants' Motion to Dismiss Plaintiff's Amended Complaint

BENJAMIN L. WALLACE
United States Attorney

CLAUDIA L. PARE
Assistant United States Attorney
Office of the United States Attorney
District of Delaware
U.S. Attorney's Office
1313 N. Market Street
Wilmington, DE 19801
(302) 573-6277
claudia.pare@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General

JAMES W. HARLOW
Acting Assistant Director

DAVID H. HIXSON (Ill. Bar No. 6289751)
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorneys
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 449-8070 (Hixson)
(202) 305-7134 (Belfer)
(202) 514-8742 (fax)
David.H.Hixson@usdoj.gov
Isaac.C.Belfer@usdoj.gov

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS................................................................1

SUMMARY OF THE ARGUMENT................................................................................1

BACKGROUND................................................................................................................3

    I.    Legal background ...........................................................................................3

        A.   CPSC's authority to disclose information about consumer products .............3

        B.   CDC's and NIH's authority to discuss infant sleep safety................................4

    II.   Factual background .......................................................................................5

        A.   Agency statements about safe sleep................................................................5

        B.   Former Commissioner Trumka's statements....................................................6

        C.   Nested Bean's retraction request ....................................................................6

    III.  This lawsuit ...................................................................................................7

LEGAL STANDARD ........................................................................................................7

ARGUMENT ...................................................................................................................8

    I.    Counts I, IV, V, VIII, and IX do not plausibly allege APA claims ...........................8

        A.   Nested Bean does not challenge "final agency action" ......................................8

             1.   Safe sleep guidance of CPSC, CDC, and NIH...........................................9

             2.   The deadlocked Commission vote ...........................................................13

        B.   CPSC did not plausibly exceed authority or ignore required procedures .... 14

        C.   Nested Bean does not plausibly allege that CPSC acted arbitrarily or
            capriciously ...............................................................................................18

        D.   CDC and NIH did not plausibly exceed their authority ..................................21

        E.   Nested Bean does not plausibly allege that CDC and NIH acted
            arbitrarily or capriciously ...........................................................................23

    II.   Count III does not plausibly allege that CDC or NIH acted *ultra vires*................24

    III.  Count VI does not plausibly allege that former Commissioner Trumka acted
       *ultra vires*...............................................................................................25

    IV.  Counts II and VII do not assert legally cognizable causes of action ....................27

    V.   Count X fails for lack of subject-matter jurisdiction and a plausible due
       process violation...........................................................................................28

    VI.  Count XI does not allege the CPSA's removal protections harmed Nested Bean 29

CONCLUSION ...............................................................................................................30

TABLE OF AUTHORITIES

## Cases

*Aerosource, Inc. v. Slater,*
   142 F.3d 572 (3d Cir. 1998) ........................................................................................ 12, 14

*Apter v. HHS,*
   80 F.4th 579 (5th Cir. 2023) .............................................................................................. 12

*Arrow Reliance, Inc. v. Califf,*
   No. 2:22-cv-1057, 2022 WL 18027595 (W.D. Wash. Dec. 30, 2022) ................................ 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................................... 8, 18

*AT&T Servs., Inc. v. FCC,*
   21 F.4th 841 (D.C. Cir. 2021) ......................................................................................... 20, 21

*Barr v. Matteo,*
   360 U.S. 564 (1959) ............................................................................................................... 15

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................................................................ 10, 11

*Brownback v. King,*
   592 U.S. 209 (2021) ................................................................................................................. 7

*Changji Esquel Textile Co. v. Raimondo,*
   40 F.4th 716 (D.C. Cir. 2022) ......................................................................................... 24, 25

*Chehazeh v. Att'y Gen. of U.S.,*
   666 F.3d 118 (3d Cir. 2012) .............................................................................................. 9, 12

*Chemours Co. FC, LLC v. EPA,*
   109 F.4th 179 (3d Cir. 2024) ...................................................................................... 10, 11, 12

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .............................................................................................................. 28

*CPSC v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980) .......................................................................................................... 3, 15

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ................................................................................................................. 7

*Dalton v. Specter,*
   511 U.S. 462 (1994) ................................................................................................................. 9

*Danara Int'l, Ltd. v. CPSC,*
   549 F. Supp. 367 (D.N.J. 1982) ............................................................................................ 17

*Devillier v. Texas,*
  601 U.S. 285 (2024)...................................................................................................... 28

*Dreamland Baby Co. v. CPSC,*
  No. 24-cv-3277-RC, 2025 WL 2758476 (D.D.C. Sep. 26, 2025) .................................. *passim*

*FDA v. Wages & White Lion Invs., LLC,*
  604 U.S. 542 (2025)...................................................................................................... 19

*Fed. Express Corp. v. U.S. Dep't of Com.,*
  39 F.4th 756 (D.C. Cir. 2022) .................................................................................. 24, 25

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,*
  313 F.3d 852 (4th Cir. 2002) ........................................................................................ 12

*FTC v. Flotill Prods., Inc.,*
  389 U.S. 179 (1967)...................................................................................................... 13

*FTC v. Standard Oil Co. of Cal.,*
  449 U.S. 232 (1980)...................................................................................................... 10

*Hindes v. FDIC,*
  137 F.3d 148 (3d Cir. 1998) .......................................................................................... 10

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984) .......................................................................................................... 8

*Holistic Candlers & Consumers Ass'n v. FDA,*
  664 F.3d 940 (D.C. Cir. 2012) ...................................................................................... 12

*In re All Terrain Vehicle Litig.,*
  979 F.2d 755 (9th Cir. 1992) ........................................................................................ 27

*In re Altheimer & Gray,*
  601 F.3d 740 (7th Cir. 2010) ........................................................................................ 21

*Indus. Safety Equip. Ass'n v. EPA,*
  837 F.2d 1115 (D.C. Cir. 1988)....................................................................................... 9

*Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div v. Loc. 134, Int'l Bhd. of Elec. Workers,*
  419 U.S. 428 (1975)........................................................................................................ 9

*Invention Submission Corp. v. Rogan,*
  357 F.3d 452 (4th Cir. 2004) ........................................................................................ 12

*Jake's Fireworks Inc. v. CPSC,*
  105 F.4th 627 (4th Cir. 2024) .................................................................................. 10, 11

*Leachco, Inc. v. CPSC,*
  103 F.4th 748 (10th Cir. 2024) ..................................................................................... 29

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014)...................................................................................................... 27

iii

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ............................................................................... 10

*Metro. Council of NAACP Branches v. FCC,*
  46 F.3d 1154 (D.C. Cir. 1995) ............................................................... 29

*Nat'l Rifle Ass'n of Am. v. Vullo,*
  602 U.S. 175 (2024) ............................................................................... 25

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.,*
  990 F.3d 834 (4th Cir. 2021) .................................................................. 9

*Neitzke v. Williams,*
  490 U.S. 319 (1989) ............................................................................... 8

*NRC v. Texas,*
  605 U.S. 665 (2025) .......................................................................... 24, 25

*NVE, Inc. v. HHS,*
  436 F.3d 182 (3d Cir. 2006) .................................................................. 20

*Oryszak v. Sullivan,*
  576 F.3d 522 (D.C. Cir. 2009) ............................................................... 9

*Perez v. Mortg. Bankers Ass'n,*
  575 U.S. 92 (2015) ................................................................................. 16

*Postal Police Officers Ass'n v. USPS,*
  502 F. Supp. 3d 411 (D.D.C. 2020) ...................................................... 25

*Pub. Citizen, Inc. v. FERC,*
  839 F.3d 1165 (D.C. Cir. 2016) ............................................................. 13

*Reliable Automatic Sprinkler Co. v. CPSC,*
  324 F.3d 726 (D.C. Cir. 2003) ......................................................... 11, 12

*Rempfer v. Sharfstein,*
  583 F.3d 860 (D.C. Cir. 2009) ............................................................... 20

*Shalala v. Guernsey Mem'l Hosp.,*
  514 U.S. 87 (1995) ................................................................................. 16

*Shurtleff v. City of Boston,*
  596 U.S. 243 (2022) ............................................................................... 15

*Sprint Nextel Corp. v. FCC,*
  508 F.3d 1129 (D.C. Cir. 2007) ....................................................... 13, 19

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ............................................................................... 28

*Trump v. Boyle,*
  145 S. Ct. 2653 (2025) ........................................................................... 1

*U.S. Postal Serv. v. Gregory*,
  534 U.S. 1 (2001) ........................................................................................ 18

*United States v. Hallinan*,
  75 F.4th 148 (3d Cir. 2023) ................................................................. 27, 28

*Vanderklok v. United States*,
  868 F.3d 189 (3d Cir. 2017) ......................................................................... 8

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ......................................................................... 8

**U.S. Constitution**

U.S. Const. amend. V ...................................................................................... 29

**Statutes**

5 U.S.C. §

551(4) ............................................................................................................. 9
551(6) ............................................................................................................. 9
551(7) ......................................................................................................... 9, 10
551(10) ......................................................................................................... 10
551(13) ...................................................................................................... 9, 10
553(b)(A) ...................................................................................................... 16
704 ................................................................................................................. 9
706(2)(A) ...................................................................................................... 19

15 U.S.C. §

2051(b)(1) ................................................................................................ 3, 15
2051(b)(2) ................................................................................................ 3, 15
2051(b)(3) ........................................................................................................ 3
2052(a)(5) ...................................................................................................... 16
2053(a) .................................................................................................. 3, 15, 29
2054(a)(1) ...................................................................................................... 15
2055 ................................................................................................................ 3
2055(b)(1) .................................................................................. 16, 26, 27, 28
2055(b)(6) .......................................................................... 4, 15, 17, 27, 28
2055(b)(7) ............................................................................................... 4, 18
2055(c) .......................................................................................................... 17
2055(d)(2) ....................................................................................................... 4
2055a(c)(2)(C)(iii) ....................................................................................... 27
2056(a) .......................................................................................................... 16
2057 ............................................................................................................... 16
2058 ............................................................................................................... 16
2060(a) .......................................................................................................... 27
2064(g) .......................................................................................................... 27

42 U.S.C. §
  241(a) ................................................................................................ 22, 23
  241(a)(1) ............................................................................................. 5, 22
  300c-11(a) ........................................................................................... 4, 22
  300c-13(a)(2) ....................................................................................... 4, 22
  300u-3(1) ............................................................................................. 4, 22

## Rules & Regulations

16 C.F.R. §
  1101.1 ...................................................................................................... 4
  1101.1(c) ............................................................................................. 4, 17
  1101.13 .................................................................................................. 26
  1101.51 .................................................................................................... 4
  1101.52 .................................................................................................... 4

48 Fed. Reg. 57,406, 57,409 (Dec. 29, 1983) ............................................ 27

## Other Authorities

Commission Directive 1450.2 (Jan. 16, 2003),
  https://perma.cc/2NV5-FXHB ................................................... 4, 25, 26

CPSC, *Helping Babies Sleep Safely* (Sep. 25, 2024) *Record of Commission Action*,
  https://perma.cc/5JDC-K8P5 ......................................................... 5, 23

CPSC, *Meeting Log* (Aug. 26, 2024),
  https://perma.cc/BM5L-CAXX ............................................................ 18

CPSC, *Record of Commission Action*,
  https://perma.cc/2WGQ-AFFG ....................................................... 7, 13

CPSC, *Safe Sleep – Cribs and Infant Products*,
  https://perma.cc/3N9A-XHP2 ............................................................... 5

H.R. Rep. No. 97-208, *as reprinted in* 1981 U.S.C.C.A.N. 1010, 1242 ................... 17

NIH, *Frequently Asked Questions (FAQ)*,
  https://perma.cc/B3ER-WW2Y ........................................................... 24

NIH, Safe to Sleep, *Collaborators & Partners*,
  https://perma.cc/5RNP-RF4P ............................................................. 23

NIH, *Safe Sleep Environment for Baby*,
  https://perma.cc/8KG9-DM53 ........................................................ 5, 20

## NATURE AND STAGE OF THE PROCEEDINGS

In March 2025, Nested Bean Inc. commenced this lawsuit, which Defendants timely moved to dismiss. On October 20, 2025, Nested Bean, Inc. filed an eleven-count Amended Complaint asserting (a) three Administrative Procedure Act ("APA") claims and a direct claim under the Consumer Product Safety Act ("CPSA") against the U.S. Consumer Product Safety Commission ("CPSC" or "Commission"); (b) an *ultra vires* claim, a due process claim, and a direct claim under the CPSA against former CPSC Commissioner Richard Trumka[1]; (c) a constitutional challenge to the CPSA; and (d) two APA claims and an *ultra vires* claim against the Department of Health and Human Services ("HHS"), the Centers for Disease Control and Prevention ("CDC"), and the National Institutes of Health ("NIH"). The Amended Complaint also names as Defendants seven individuals who serve or served at CPSC, HHS, CDC, or NIH.

Defendants now move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).

## SUMMARY OF THE ARGUMENT

CPSC provides the public with information about the risks of injury for various consumer products. In 2023, CPSC added to its safe sleep webpage guidance recommending against the use of weighted infant blankets and swaddles, which was based on similar advice by CDC and NIH. Later, now-former Commissioner Trumka

---

[1] Before the Amended Complaint was filed, President Trump removed three CPSC Commissioners, including Richard Trumka, from office. *See Trump v. Boyle*, 145 S. Ct. 2653 (2025).

expressed, through social media and letters to retailers, his individual view that weighted infant sleep products are unsafe.

Nested Bean designs, manufactures, and sells infant and toddler products, including weighted infant sleep products. Nested Bean disagrees with CPSC's, CDC's, and NIH's guidance about weighted infant sleep products and former Commissioner Trumka's individual actions. In November 2024, Nested Bean requested that the Commission retract both the guidance on its website and former Commissioner Trumka's statements. The Commission deadlocked on whether to grant or deny the request.

Nested Bean now sues CPSC, former Commissioner Trumka, HHS, CDC, and NIH. It asserts APA claims against CPSC (Counts I, VIII, and IX) and HHS, CDC, and NIH (Counts IV and V), challenging the agencies' guidance about weighted infant sleep products and the Commission's deadlocked vote on Nested Bean's retraction request. However, neither the guidance nor the deadlocked vote constitutes a final agency action reviewable under the APA. Even if they did, Nested Bean's conclusory allegations do not plausibly show that any of the agencies exceeded its statutory authority, acted arbitrarily or capriciously, or failed to observe required procedures.

Nested Bean's *ultra vires* claims against HHS, CDC, and NIH (Count III), and against former Commissioner Trumka (Count VI) are no more availing. The agencies have clear statutory authority to offer safety guidance to the public. And former Commissioner Trumka's statements were permissible because they repeated CPSC's (also permissible) guidance and did not run afoul of statutory requirements that apply

when a CPSC statement identifies a particular manufacturer or private labeler. Nested Bean's attempts to assert, in the alternative, direct claims under the CPSA against CPSC (Count II) and former Commissioner Trumka (Count VII) fail for lack of a cause of action.

Finally, Nested Bean's due process claim against former Commissioner Trumka (Count X) and constitutional challenge to the Commissioners' for-cause removal protections (Count XI) are meritless. Nested Bean merely speculates about harm it might suffer from former Commissioner Trumka's alleged bias or the statutory removal protections. That will not suffice for jurisdiction or a plausible claim.

For all the foregoing reasons, the Amended Complaint should be dismissed in its entirety.

## BACKGROUND

## I.    Legal background

### A.    CPSC's authority to disclose information about consumer products

Among other missions, CPSC "protect[s] the public against unreasonable risks of injury associated with consumer products," "assist[s] consumers in evaluating the comparative safety of consumer products," and "develop[s] uniform safety standards for consumer products." 15 U.S.C. §§ 2051(b)(1)-(3), 2053(a). This case involves the Commission's "broad powers" under the CPSA "to gather, analyze, and disseminate vast amounts of private information." *CPSC v. GTE Sylvania, Inc.*, 447 U.S. 102, 111 (1980). Subject to certain exceptions, 15 U.S.C. § 2055 governs any public disclosure of "information . . . by the Commission, any member of the Commission, or any employee,

agent, or representative of the Commission in an official capacity." *Id.* § 2055(d)(2).

Section 2055(b)(6) requires that CPSC "establish procedures designed to ensure" its

"public disclosure of information that reflects on the safety of a consumer product or

class of consumer products . . . is accurate and not misleading." *Id.* § 2055(b)(6). Those

procedures are contained in Commission Directive 1450.2 (Jan. 16, 2003),

https://perma.cc/2NV5-FXHB. *See* 16 C.F.R. § 1101.1(c).

      CPSC must retract information if it "finds that, in the administration of this Act,

it has made a public disclosure of inaccurate or misleading information which reflects

adversely upon the safety of any consumer product or class of consumer products, or

the practices of any manufacturer . . . of consumer products." 15 U.S.C. § 2055(b)(7).

Upon such a finding, the agency "shall, in a manner equivalent to that in which such

disclosure was made, take reasonable steps to publish a retraction of such inaccurate or

misleading information." *Id.*; *see* 16 C.F.R. §§ 1101.1, 1101.51-1101.52.

      **B.    CDC's and NIH's authority to discuss infant sleep safety**

      The Public Health Service Act grants HHS and its subagencies, including CDC

and NIH, broad authority to communicate with the public about safe infant sleep. For

example, HHS and its subagencies are authorized to "disseminat[e] information to

educate the public" about "sudden unexpected infant death," 42 U.S.C. § 300c-13(a)(2),

and "develop, support, or maintain programs" that address it, *id.* § 300c-11(a). The

agencies are also empowered to conduct "activities" to make "health information"

available to those who need it, including through "[t]he publication of information"

about topics such as "child care" and "safety and accident prevention." *Id.* § 300u-3(1).

4

They are further authorized to "collect and make available through publications and other appropriate means, information as to, and the practical application of" "research, investigations, experiments, demonstrations, and studies relating to the causes . . . and prevention of physical and mental diseases." *Id.* § 241(a)(1).

## II.    Factual background

### A.    Agency statements about safe sleep

In late 2023, CPSC "modified" its Safe Sleep webpage "to recommend that the public not use . . . weighted infant blankets and swaddles." Am. Compl. ¶ 107. CPSC stated, "This guidance is based on information from the Centers for Disease Control and the National Institutes for Health. Please go to CDC.gov and NIH.gov for more information." *Id.* (quoting CPSC, *Safe Sleep – Cribs and Infant Products*, https://perma.cc/3N9A-XHP2).

CDC and NIH also maintain webpages with "Safe to Sleep guidance for the public." *Id.* ¶ 8. A CDC webpage identifies steps to "reduce the risk of sleep-related infant deaths" and informs the public that "[p]roducts labeled as weighted—including weighted sleepers, swaddles, sleep sacks, and blankets—are not safe for infants." CDC, *Helping Babies Sleep Safely* (Sep. 25, 2024), https://perma.cc/5JDC-K8P5; Am. Compl. ¶ 84. NIH also has a webpage dedicated to creating a "safe sleep area," which explains that "[t]hings in the sleep area can pose dangers for" babies, especially if they are "[w]eighted (e.g., weighted blankets, weighted swaddles)." NIH, *Safe Sleep Environment for Baby,* https://perma.cc/8KG9-DM53; Am. Compl. ¶ 86.

### B. Former Commissioner Trumka's statements

In early 2024, then-Commissioner Trumka issued public statements expressing his personal concern about weighted infant sleep products and advising against their use. Am. Compl. ¶¶ 110-121. On January 26, 2024, Commissioner Trumka posted a message to his official X account noting CPSC's safe sleep guidance was "in agreement" with recommendations by CDC, NIH, and the American Academy of Pediatrics ("AAP"). *Id.* ¶ 110. The post included a link to a Washington Post article that in turn mentioned Nested Bean. *Id.* On April 15, 2024, Commissioner Trumka wrote several retailers asking them to consider not selling weighted infant sleep products and included a link to the Washington Post article. *Id.* ¶¶ 112, 120-21. The same day, Commissioner Trumka posted a video to social media about weighted swaddles and blankets, and he released a statement noting that CPSC's safe sleep guidance recommended against weighted infant sleep products. *Id.* ¶¶ 113-14. On April 26, 2024, Commissioner Trumka posted another video to social media after four retailers decided to "cease sales of weighted infant products." *Id.* ¶¶ 120-21.

### C. Nested Bean's retraction request

Nested Bean designs, manufactures, and sells "infant and toddler products," including infant sleep products "marketed as 'weighted.'" *Id.* ¶ 12. On November 11, 2024, Nested Bean requested that CPSC retract its safe sleep guidance and Commissioner Trumka's statements about weighted infant sleep products. *Id.* ¶¶ 129-30. Around December 19, 2024, the Commission voted "0-1-1-2" on the retraction request—that is, "zero commissioners voting for the retraction, one and one

representing separately proposed courses of action, and two representing abstentions."[2]

*Id.* ¶ 131 (citing CPSC, *Record of Commission Action*, https://perma.cc/2WGQ-AFFG

("RCA")). Because "[a] majority was not reached," the Commission took "no action" on

Nested Bean's retraction request. RCA 1.

### III.    This lawsuit

Nested Bean commenced this lawsuit in March 2025. D.I. 1. In response to

Defendants' first motion to dismiss, D.I. 26, Nested Bean filed an eleven-count

Amended Complaint on October 20, 2025, D.I. 30. Nested Bean asks this Court

to declare that the agencies' various statements were unlawful, former Commissioner

Trumka is impermissibly biased, and the removal protections are unconstitutional, as

well as to order that the agencies retract their statements and not make further

statements about weighted infant sleep products. *Id.*, Prayer for Relief.

Defendants now move to dismiss the Amended Complaint for lack of subject-

matter jurisdiction and failure to state a claim.

### LEGAL STANDARD

On a motion under Federal Rule of Civil Procedure 12(b)(1), the Court

"presume[s]" to "lack jurisdiction" and the plaintiff carries the "burden of establishing

it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted). At the

pleading stage, the plaintiff "must plausibly allege all jurisdictional elements."

*Brownback v. King*, 592 U.S. 209, 217 (2021).

---

[2] Commissioner Trumka voluntarily recused himself from the matter. *Id.* ¶ 131.

Under Rule 12(b)(6), "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In reviewing a motion to dismiss, courts consider "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Winer Family Tr. v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007) (citation omitted). Such matters include "information [that] is publicly available on government websites." *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

**ARGUMENT**

## I.     Counts I, IV, V, VIII, and IX do not plausibly allege APA claims

### A.     Nested Bean does not challenge "final agency action"

Nested Bean raises APA claims against CPSC in Counts I, VIII, and IX, Am. Compl. ¶¶ 138-67, 239-65, and against HHS, CDC, and NIH in Counts IV and V, *id.* ¶¶ 193-210. However, "the APA does not provide judicial review for everything done

8

by an administrative agency." *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (citation omitted). Rather, the "APA provides for judicial review only of '*final* agency action.'" *Dalton v. Specter*, 511 U.S. 462, 469 (1994) (quoting 5 U.S.C. § 704). The term "final agency action" comprises "two components—agency action and finality of agency action," each of which "narrows the scope of judicial review." *Nat'l Veterans Legal Servs.*, 990 F.3d at 839.

Nested Bean avers that the safe sleep guidance of CPSC, CDC, and NIH and the Commission's deadlocked retraction vote are final agency action. Am. Compl. ¶ 143. But non-binding guidance and a deadlocked vote are not "agency action," much less "final agency action." Counts I, IV, V, VIII, and IX therefore "cannot state a claim under the APA." *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012) (quoting *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009)).

## 1. Safe sleep guidance of CPSC, CDC, and NIH

*No "agency action."* The Amended Complaint does not allege that the guidance from CPSC, CDC, and NIH is a particular type of "agency action" under 5 U.S.C. § 551(13), and none of the few possibilities fits. Unlike an "order," *id.* § 551(6), the guidance is not a "final disposition," formulated through an "adjudication," with "determinate consequences" for anyone, *id.* § 551(6)-(7); *Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div v. Loc. 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 443 (1975). It does "not order anybody to do anything," and "standing alone," it "binds no one*." Int'l Tel. & Tel.*, 419 U.S. at 444-44 (citation omitted). The same absence of any "legal effect" precludes treating the guidance as a "rule." 5 U.S.C. § 551(4); *Indus. Safety Equip. Ass'n v.*

*EPA*, 837 F.2d 1115, 1118-19 (D.C. Cir. 1988) (report warning against the use of certain asbestos-protection respirators was not a rule or other agency action). Similarly, guidance to consumers is not a "sanction" because it does not plausibly limit Nested Bean's "freedom" or withhold relief, impose a fine, take or withhold property, assess damages, revoke any license, or take any "other compulsory or restrictive action." 5 U.S.C. § 551(10); *see Arrow Reliance, Inc. v. Califf*, No. 2:22-cv-1057, 2022 WL 18027595, at *4 (W.D. Wash. Dec. 30, 2022) (FDA press release recommending that consumers not use plaintiff's pet food was not a sanction or other agency action).

**No "final agency action."** Even if the agencies' guidance was "agency action" under 5 U.S.C. § 551(13), it is not "final agency action," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). An "agency action" is "final" when it: (1) "mark[s] the consummation of the agency's decisionmaking process"; and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Chemours Co. FC, LLC v. EPA*, 109 F.4th 179, 184 (3d Cir. 2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). An action must satisfy both prongs to be final. *See id.*

Nested Bean cannot satisfy the first *Bennett* prong because the agencies' safe sleep guidance did not consummate any decisionmaking process. Nothing in the guidance committed the agencies to a "definitive" position on the lawfulness of any product or to take any enforcement or regulatory action. *Hindes v. FDIC*, 137 F.3d 148, 162 (3d Cir. 1998) (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980)); *see Jake's Fireworks Inc. v. CPSC*, 105 F.4th 627, 632 (4th Cir. 2024) (CPSC warning notice did not consummate agency process because it "d[id] not trigger any of the administrative,

10

civil, or criminal proceedings that the [agency] could pursue"), *cert. denied,* 145 S. Ct.

2700 (2025). Nor does the guidance bear the hallmarks of final agency orders. For

example, "when the Commission itself does issue orders, it says so, stating that they are

'final decisions and orders' to perform clearly binding commands." *Jake's Fireworks*, 105

F.4th at 633 (citation omitted). As such, the agencies' guidance did not go through any

of "the steps required" for it "to have any legal consequences," and therefore it did not

consummate any agency process. *Reliable Automatic Sprinkler Co. v. CPSC,* 324 F.3d 726,

732 (D.C. Cir. 2003).

 Nested Bean also cannot satisfy the second *Bennett* prong because the guidance

did not determine any "rights" or establish any "direct consequence for parties who

choose to disregard [the agencies'] advice." *Chemours*, 109 F.4th at 184-85 (quoting

*Bennett*, 520 U.S. at 178). Nested Bean does not (and could not plausibly) allege that the

guidance imposes any "obligations, prohibitions, or restrictions," *id.* at 184, or "fixes

some legal relationship," *Reliable*, 324 F.3d at 731. To the contrary, Nested Bean

concedes that the guidance merely "opine[d]" on the safety of certain products, Am.

Compl. ¶¶ 151, 191, and that "CPSC has not . . . adopted any mandatory product safety

standards for 'weighted' infant sleep products" nor "issued a recall, stop sale, or ban for

Nested Bean's products," *id.* ¶ 7; *see id.* ¶ 108. Nested Bean further concedes that neither

CDC nor NIH "ha[s] the authority" to make such legally binding determinations. *Id.*

¶ 27. In other words, the agencies "cannot enforce" their safe sleep guidance. *Chemours*,

109 F.4th at 185. And any possible "persua[sive]" effect on third parties, *id.* at 186, or

11

"practical consequences" for Nested Bean's business, *Reliable*, 324 F.3d at 732, is irrelevant, *see Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004).

Nested Bean mistakenly relies on *Apter v. HHS*, 80 F.4th 579 (5th Cir. 2023), to argue that agency statements "advocating for or against a particular action by the public are final agency action," Am. Compl. ¶ 142. *Apter* held the opposite: FDA's recommendation that the public not use ivermectin was "not *final* agency action" because it did not "bind FDA and its staff to a legal position," "set forth a legal standard," or contain FDA's definitive "view of the law." 80 F.4th at 594 (cleaned up). That accords with numerous decisions holding that non-binding warnings, like the guidance here, are not final agency action under the APA. *See, e.g.*, *Chemours*, 109 F.4th at 184-85 (health advisory about safe levels of chemical in drinking water); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 581 (3d Cir. 1998) (reports to aviation community about improperly maintained aircraft parts); *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 945 & n.6 (D.C. Cir. 2012) (FDA warning letter); *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 854 (4th Cir. 2002) (report classifying environmental tobacco smoke as a carcinogen).

Nested Bean has not plausibly alleged that the guidance from CPSC, CDC, or NIH guidance is "agency action" *and* "final agency action." Thus, Counts I and VIII should be dismissed at least as to CPSC's guidance,[3] and Counts IV, V, and IX should be dismissed in full. *Chehazeh*, 666 F.3d at 125 n.11.

---

[3] Counts I and VIII also challenge CPSC's deadlocked vote, discussed below.

### 2.  The deadlocked Commission vote

CPSC's deadlocked vote on Nested Bean's retraction request, challenged in Counts I and VIII, also is not "agency action" or "final agency action." The D.C. Circuit has squarely held that the "deadlocked vote" of a multi-member commission "cannot be considered an order of the Commission nor can it constitute agency action." *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1131 (D.C. Cir. 2007); *see Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1170 (D.C. Cir. 2016) ("FERC did not engage in collective, institutional action when it deadlocked on FCA 8's rates."). A deadlock is not equivalent to "denying [the] petition" because "the general rule that a tied vote retains the status quo" is the natural "consequence[]" of "the 'almost universally accepted common-law rule' that only a 'majority of a collective body is empowered to act for the body.'" *Sprint Nextel*, 508 F.3d at 1131-32 (quoting *FTC v. Flotill Prods., Inc.*, 389 U.S. 179, 183 (1967)). "The votes were actions of the individual Commissioners, not the Commission," and "[t]ies therefore do not result in Commission action." *Id.*

Here, "[t]he outcome of the [Commission's] vote was 0-1-1-2," Am. Compl. ¶ 131—that is, 0 votes to grant or deny the request, 1 and 1 representing votes "to take other action[s]," and 2 abstentions—resulting in "no action" on Nested Bean's request, RCA 1. So "[t]he Commission did not grant" Nested Bean's retraction request, "and it did not deny it." *Sprint Nextel*, 508 F.3d at 1132. Because "the Commission took no action in this case," *id.*, the deadlocked vote cannot give rise to a viable APA claim.

Even had the Commission denied Nested Bean's retraction request, that *still* would not be final agency action subject to review. In *Aerosource*, the Third Circuit held

that FAA's denial of requests to retract agency reports was not final action. 142 F.3d at 580. Just like the agency's original reports, the denials "did not impose an obligation, deny a right, or fix some legal relationship." *Id*. The court emphasized that "treat[ing] the denial of an application to reconsider . . . as a final order" would allow a petitioner to "convert" the nonfinal FAA reports into a final agency action "simply by asking for reconsideration." *Id*. at 579. "Of course," the Third Circuit concluded, "this conversion should not be permitted." *Id*.

*Aerosource* is directly on point. "The only thing" that Nested Bean could have been "denied" was "the 'right' to the" retraction of statements by CPSC and former Commissioner Trumka. *Id*. at 580. But the deadlocked vote "did not require [Nested Bean] to do anything, and there is nothing" from the vote "with which [Nested Bean] is expected to comply." *Id*. "Thus," CPSC's response to the retraction request "no more imposed legal obligations, fixed rights, or altered a legal relationship than did the" underlying statements "themselves." *Id*. at 581. Therefore, the deadlocked vote is not itself final agency action, and Counts I and VIII should be dismissed.

## B.    CPSC did not plausibly exceed authority or ignore required procedures

Apart from the lack of final agency action, Counts I and IX do not plausibly allege that CPSC's safe sleep guidance and deadlocked vote exceeded its statutory authority or failed to observe required procedures. Am. Compl. ¶¶ 151-52, 158, 166, 259-65. The District Court for the District of Columbia recently rejected an identical challenge. *See Dreamland Baby Co. v. CPSC*, No. 24-cv-3277-RC, 2025 WL 2758476, at *7, *9 (D.D.C. Sep. 26, 2025). This Court should too.

14

Congress charged CPSC with, among other things, "protect[ing] the public against unreasonable risks of injury associated with consumer products" and "assist[ing] consumers in evaluating the comparative safety of consumer products." 15 U.S.C. § 2051(b)(1)-(2); *see id.* § 2053(a). Congress "gave the Commission broad powers to gather, analyze, and disseminate vast amounts of private information." *GTE Sylvania*, 447 U.S. at 111. Those "powers include the authority to collect and disseminate product safety information." *Id.* at 104 (citing 15 U.S.C. § 2054(a)(1)). For example, CPSC must "collect, investigate, analyze, and disseminate injury data, and information, relating to the causes and prevention of death, injury, and illness associated with consumer products." 15 U.S.C. § 2054(a)(1).

By requiring CPSC to "establish procedures" regarding public disclosure of "information that reflects on the safety of a consumer product or class of consumer products," Congress necessarily recognized that CPSC has authority to make such disclosures. *See id.* § 2055(b)(6). Moreover, like all federal agencies, CPSC has inherent authority to communicate information to the public. *See Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022) ("When the government wishes to state an opinion, to speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say. That must be true for government to work."); *cf. Barr v. Matteo*, 360 U.S. 564, 574-75 (1959) (plurality opinion) (implicit authority for public officials to make a "public statement of agency policy in respect to matters of wide public interest and concern").

15

CPSC's safe sleep guidance falls within these broad authorities. Weighted baby blankets and swaddles are "consumer product[s]" under 15 U.S.C. § 2052(a)(5). And the guidance conveys safety information about those products and how to reduce the risk of injury to babies from products in their sleep space. *See* Am. Compl. ¶ 107.

Ignoring these statutory authorities, Nested Bean calls CPSC's guidance a "product safety determination," *id.* ¶ 150, and suggests the agency failed to comply with APA notice-and-comment requirements for rulemaking, *id.* ¶¶ 220, 263. But CPSC's safe sleep guidance was not a regulation and "do[es] not have the force and effect of law," so the APA's "notice-and-comment requirement 'does not apply.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) and 5 U.S.C. § 553(b)(A)). Equally inapplicable are the CPSA's requirements for promulgating a mandatory safety standard, Am. Comp. ¶¶ 145-46 (citing 15 U.S.C. §§ 2056(a), 2058), or banning hazardous products, *id.* ¶ 145 (citing 15 U.S.C. § 2057). Nested Bean concedes that CPSC's guidance was not a mandatory safety standard or a hazardous product ban, *see id.* ¶¶ 4, 73, which renders 15 U.S.C. §§ 2057 and 2058 irrelevant, *see Dreamland*, 2025 WL 2025 WL 2758476, at *7.

Nested Bean baselessly asserts that CPSC should have complied with 15 U.S.C. § 2055(b)(1)'s advance notice-and-comment requirement because Nested Bean's "identity was readily ascertainable from" CPSC's guidance. Am. Compl. ¶¶ 165-66. However, the guidance does not identify Nested Bean or its products and mentions only broad *categories* of products—"weighted blankets" and "weighted swaddles." *Id.* ¶ 107. Nested Bean also does allege anyone learned its identity from the guidance. The

supposed market reaction from Target and Amazon, the Amended Complaint concedes, was more than *four months* after the guidance and "in response to" former Commissioner Trumka's statements, *not* the guidance. *Id.* ¶¶ 116, 122; *see id.* ¶¶ 112-19.

Nested Bean also does not plausibly assert a violation of the one statute—15 U.S.C. § 2055(b)(6)—that does apply here. *See* Am. Compl. ¶¶ 154-63. Section 2055(b)(6) requires CPSC to "establish procedures designed to ensure that" information it discloses reflecting on the safety of a consumer product "is accurate and not misleading." This "requirement is solely a direction to the Commission to establish internal clearance procedures." *Danara Int'l, Ltd. v. CPSC*, 549 F. Supp. 367, 375 (D.N.J. 1982) (quoting H.R. Rep. No. 97-208, *as reprinted in* 1981 U.S.C.C.A.N. 1010, 1242). CPSC did so in Directive 1450.2. *See* 16 C.F.R. § 1101.1(c); Am. Compl. ¶ 53.

Nested Bean only speculates that "the Commission failed to adequately adhere to the clearance procedures." Am. Compl. ¶ 155. Nested Bean does not explain why CPSC's safe sleep guidance "does not accurately reflect the status of [agency] programs, *id.* ¶¶ 161-62, or fails to "retain[]" editorial "style and coherence," *id.* ¶¶ 163-64 (alteration in original). It assumes CPSC "d[id] not have information to support" the guidance and so must not have conducted "safety evaluations or research" *id.* ¶¶ 156-57, because the agency purportedly did not "communicate to" Nested Bean "information as to any significant risk of injury associated with" the company's products, 15 U.S.C. § 2055(c); *see* Am. Compl. ¶¶ 156-58, 256. But the CPSA does not require the agency to find or provide information to a manufacturer showing that a particular product presents a "significant risk of injury" before the agency issues a non-

binding safety guidance. *Contra* Am. Compl. ¶ 158. Nested Bean's conclusory allegations cannot overcome the "presumption of regularity [that] attaches to the actions of Government agencies." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001); *see Dreamland*, 2025 WL 2758476, at *7.

Finally, Nested Bean "is wrong to state that the CPSC lacked any data or evidence of safety risks." *Dreamland*, 2025 WL 2758476, at *7; *contra* Am. Compl. ¶¶ 155-59. Agency data include reports of multiple fatalities and other injuries involving weighted infant sleep products. *See Dreamland*, 2025 WL 2758476, at *7; CPSC, *Meeting Log* (Aug. 26, 2024), https://perma.cc/BM5L-CAXX.[4] Accordingly, Count I fails as to the CPSC guidance, and Count IX fails in its entirety.

Count I further does not plausibly allege that the Commission's deadlocked vote exceeded its authority. *See* Am. Compl. ¶ 151. The CPSA empowers the Commission to determine whether "to publish a retraction of" allegedly "inaccurate or misleading" information. 15 U.S.C. § 2055(b)(7). That authority plainly permitted the Commission's vote on Nested Bean's retraction request. The Amended Complaint's "labels and conclusions" to the contrary are insufficient to salvage Count I. *Iqbal*, 556 U.S. at 678.

## C.    Nested Bean does not plausibly allege that CPSC acted arbitrarily or capriciously

Count VIII asserts that the Commission's deadlocked vote and safe sleep guidance were "arbitrary and capricious" under the APA. Am. Compl. ¶¶ 239-57 (citing

---

[4] Nested Bean also criticizes CPSC's evaluation of the evidence and purported failure to define a term. Am. Compl. ¶¶ 159, 164, 264. These assertions are relevant to Count VIII's arbitrary and capricious claim, and are discussed in Part I.C below.

5 U.S.C. § 706(2)(A)). As to the deadlocked vote, Nested Bean alleges (i) the vote was "irreconcilable" with the Commission's November 2023 "decision to *not* initiate [a] mandatory safety standards [rulemaking]," and (ii) the Commission did not explain this change or why it "denied" Nested Bean's retraction request. *Id.* ¶¶ 243, 251-55. But the Commission's deadlocked vote did not take any action on Nested Bean's retraction request, *see supra* Part I.A.2, so there was no decision to explain, *see Sprint Nextel*, 508 F.3d at 1132, and no possibility that the deadlocked vote "changed existing policy" or was "inconsistent[] with an earlier position," *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 570 (2025) (citation omitted). Similarly, the Commission did not "revers[e]" or "disavow[] as no longer good law" its November 2023 decision not to adopt an amendment requiring agency staff to pursue a rulemaking. *Id.* (citations omitted).

As to the safe sleep guidance, Nested Bean offers four implausible theories why CPSC failed to engage in "reasoned decision-making." Am. Compl. ¶ 247. *First*, Nested Bean asserts that "CPSC blindly followed the unsupported conclusions of the CDC and NIH," *id.* ¶ 249, without "conduct[ing] its own research or made its own determination as to the safety of [weighted infant sleep] products." *Id.* ¶ 107. But the Amended Complaint disproves that assertion, describing "a market survey" that CPSC staff undertook of weighted and unweighted products, Am. Compl. ¶¶ 104, 106 (citing Ex. 5, D.I. 30-6), agency findings regarding "differences in the weight concentration" between the two groups, *id.* ¶ 104 (citing Ex. 5 at 3), and CPSC's active participation in the ASTM International subcommittee that develops voluntary consensus technical standards, *id.* ¶¶ 99, 103-04, 106. More broadly, it was reasonable for CPSC to cite CDC and NIH

because they, like CPSC, are charged with protecting the public health and partnered in the Safe to Sleep campaign. *See infra* Part I.D; *see also, e.g.,* NIH, *Safe Sleep Environment for Baby*.

    *Second*, Nested Bean criticizes CPSC's reliance on AAP's recommendation that "was not based on data" showing that weighted infant sleep products are affirmatively dangerous, "but on a lack of data; specifically, the lack of scientific peer reviewed data" establishing that weighted products are safe. Am. Compl. ¶ 85; *see id.* ¶¶ 90, 159, 249; Ex. 1 at 21, D.I. 30-2. Nested Bean's mere "disagreement" with CPSC's guidance, however, "is insufficient to demonstrate that [the agency] failed to examine the relevant data" or draw a "rational connection between the facts found and the choice made." *AT&T Servs., Inc. v. FCC*, 21 F.4th 841, 851 (D.C. Cir. 2021) (citation omitted). Nested Bean also has no basis for speculating that AAP's recommendation caused CPSC to mistakenly "conflate" the dangers of "soft bedding generally" with the risks of weighted sleep products. Am. Compl. ¶¶ 90, 152, 209. And while Nested Bean emphasizes a single study whose "initial findings were that weighted blankets *may* be beneficial," *id.* ¶ 85 (emphasis added) (quoting Ex. 2 at 8, D.I. 30-3), "the absence of a hazard pattern, especially within a limited data set, does not mean a product involved in multiple infant fatalities is necessarily safe," *Dreamland*, 2025 WL 2758476, at *7. Accordingly, Nested Bean cannot plausibly overcome the "high level of deference" afforded to a CPSC judgment made within "its area of expertise." *Rempfer v. Sharfstein*, 583 F.3d 860, 867 (D.C. Cir. 2009) (citation omitted); *see NVE, Inc. v. HHS*, 436 F.3d 182,

196 (3d Cir. 2006) ("A reviewing court 'must generally be at its most deferential' when reviewing factual determinations within an agency's area of special expertise.").

*Third*, Nested Bean speculates that CPSC failed to "consider[]" evidence that Nested Bean provided "regarding its products." Am. Compl. ¶ 264; *see id.* ¶¶ 7, 79, 85, 98. But CPSC's safe sleep guidance addresses a *class* of products. And Nested Bean does not allege its products are representative of the class. To the contrary, Nested Bean criticizes "unscrupulous" competitors, *id.* ¶ 81, and touts its products as "innovative," worthy of "award[]," and "much lighter than many" other products, *id.* ¶¶ 4, 105, 118.

*Fourth*, Nested Bean says CPSC's safe sleep guidance would have been better if it defined "weighted," *id.* ¶ 63, rather than "leaving the public and retailers to identify the product based on an undefined marketing term," *id.* ¶ 235. This kind "disagreement" with CPSC's approach does not support an APA claim. *AT&T Servs.*, 21 F.4th at 851. Furthermore, CPSC reasonably employed a term that *Nested Bean* "coined," used to market its own products, and made familiar to consumers. Am. Compl. ¶ 4. Having "applied that label to [it]self," Nested Bean "is hardly in a position to complain." *In re Altheimer & Gray*, 601 F.3d 740, 742 (7th Cir. 2010).

Nested Bean has not plausibly alleged CPSC acted arbitrarily and capriciously, and therefore Count VIII should be dismissed.

### D.    CDC and NIH did not plausibly exceed their authority

Count IV does not plausibly allege that CDC's and NIH's statements about weighted infant sleep products exceeded their statutory authority. Am. Compl. ¶¶ 193-201. Nested Bean baldly asserts "[t]he Public Health Service Act does not authorize"

21

CDC or NIH "to opine on the safety of consumer products," and the agencies'
statements fall outside their "research duties" and "limited authority to investigate the
causes of Sudden Infant Death Syndrome (SIDS)." *Id.* ¶¶ 195-96, 199. Even a cursory
review of the relevant laws, however, shows that CDC and NIH acted pursuant to clear
statutory authority.

The Public Health Service Act expressly authorizes HHS and its subagencies to
"disseminat[e] information to educate the public, health care providers, and other
stakeholders on . . . sudden unexpected infant death." 42 U.S.C. § 300c-13(a)(2). The
agencies also may "develop, support, or maintain programs or activities to address
sudden unexpected infant death." *Id.* § 300c-11(a). In addition, they may "conduct . . .
such activities as may be required to make information respecting health information
and health promotion . . . available to the consumers of medical care . . . and others who
are or should be informed respecting such matters," including "[t]he publication of
information" about topics such as "child care" and "safety and accident prevention." *Id.*
§ 300u-3(1). These statutes plainly authorize CDC's and NIH's statements about the
risks posed by weighted infant sleep products.

HHS and its subagencies also have authority to "encourage, cooperate with, and
render assistance to . . . , and promote the coordination of, research, investigations,
experiments, demonstrations, and studies relating to the causes . . . and prevention of
physical and mental diseases." 42 U.S.C. § 241(a). Further, they may "collect and make
available through publications and other appropriate means, information as to, and the
practical application of, such research and other activities." *Id.* § 241(a)(1). This supplies

even more authority for CDC's and NIH's challenged statements as the statements make "available information as to, and the practical application of," AAP's evidence-based recommendations to reduce the risk of sleep-related infant deaths. *Id.*; *see* NIH, Safe to Sleep, *Collaborators & Partners*, https://perma.cc/5RNP-RF4P (last accessed Dec. 19, 2025); CDC, *Helping Babies Sleep Safely*.[5] Accordingly, Nested Bean has not plausibly alleged that CDC or NIH acted "in excess of" statutory authority, and Count IV should be dismissed.

### E.    Nested Bean does not plausibly allege that CDC and NIH acted arbitrarily or capriciously

Count V offers implausible theories why CDC's and NIH's safe sleep statements were "arbitrary and capricious." Am. Compl. ¶¶ 202-10. Nested Bean claims the agencies shared CPSC's mistaken reliance on AAP's "unsupported conclusions." *Id.* ¶ 208. As discussed, however, the agencies reasonably determined that AAP's analysis supported their safe sleep guidance. *See supra* pp. 20-21. Otherwise, Nested Bean speculates that CDC and NIH must have erred by "conflat[ing] research on the risks of soft bedding generally, with research on 'weighted' sleep products." Am. Comp. ¶ 209. Again, Nested Bean's speculation and mere disagreement with the agencies' approach are insufficient to state a plausible claim. *See supra* p. 20. Moreover, NIH succinctly explained the agencies' rationale: "[T]here is not enough evidence that weighted

---

[5] While Nested Bean contends the government ceased participating in the Safe to Sleep campaign as of April 2025, Am. Compl. ¶¶ 198-99, that would not affect the underlying statutory authority for CDC and NIH to disseminate and make available information to educate the public on sudden infant death.

blankets and swaddles are safe to use." Am. Comp. ¶ 87 (quoting NIH, *Frequently Asked Questions (FAQ)*, https://perma.cc/B3ER-WW2Y (last accessed Dec. 19, 2025)). Count V should be dismissed.

## II.     Count III does not plausibly allege that CDC or NIH acted *ultra vires*

Count III challenges CDC's and NIH's safe sleep statements as *ultra vires*. Am. Compl. ¶¶ 178-92.[6] One court has already rejected this meritless claim. *See Dreamland*, 2025 WL 2758476, at *10. This Court should as well.

*Ultra vires* review has an "extremely limited scope." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721-22 (D.C. Cir. 2022) (citation omitted). Nested Bean must show that CDC and NIH took "action entirely in excess of [their] delegated powers and contrary to a *specific prohibition* in a statute." *Texas*, 605 U.S. at 681 (citation omitted). "Only error that is patently a misconstruction of [statute], that disregard[s] a specific and unambiguous statutory directive, or that violate[s] some specific command of a statute will support relief." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (citation omitted). As the Supreme Court recently said, an *ultra vires* challenge is "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Texas*, 605 U.S. at 681-82.

Nested Bean has not come close to meeting this demanding standard. As shown above, CDC and NIH acted pursuant to clear statutory authorities. Indeed, Nested Bean

---

[6] If the Court finds that Counts IV or V states an APA claim, *ultra vires* review would be "unavailable" because the APA would provide Nested Bean "a meaningful and adequate opportunity for judicial review." *NRC v. Texas*, 605 U.S. 665, 681 (2025).

does not even allege that CDC and NIH acted "contrary to a *specific prohibition* in a statute." *Id*. at 681 (citation omitted). Nor could it—there is no such prohibition. *See Dreamland*, 2025 WL 2758476, at *10. Count III therefore fails.

## III. Count VI does not plausibly allege that former Commissioner Trumka acted *ultra vires*

In Count VI, Nested Bean attacks former Commissioner Trumka's statements as *ultra vires* in five respects, but each argument fails. *First*, the notion that Commissioner Trumka unlawfully "determined that a product presents an unreasonable risk of injury," Am. Compl. ¶ 221, is refuted by Nested Bean's concession that CPSC has not adopted any "mandatory product safety standards" or "ban" on weighted infant sleep products, *id.* ¶¶ 7-8, 108. *Second*, in asserting that an individual Commissioner cannot "advocate[]" for a particular outcome, *id.* ¶ 221, Nested Bean ignores the principle that "[a] government official can share her views freely and . . . do so forcefully in the hopes of persuading others to follow her lead," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024). *Third*, because CPSC's guidance was not itself *ultra vires*, Commissioner Trumka did not step "plainly beyond the bounds of" his authority, *Fed. Express*, 39 F.4th at 764, by merely "repeat[ing]" that guidance, Am. Compl. ¶ 221.

*Fourth*, Nested Bean speculates that Commissioner Trumka "did not follow the internal clearance process and directives before issuing his statements." *Id*. ¶ 226 (citing Directive 1450.2). But *ultra vires* claims require violations of "clear *statutory* provisions"; they cannot be based on "[r]outine regulatory violations" or failing to comply with internal agency procedures. *Changji*, 40 F.4th at 725 (emphasis added); *accord Postal*

*Police Officers Ass'n v. USPS*, 502 F. Supp. 3d 411, 422 (D.D.C. 2020). Regardless, Directive 1450.2 establishes an alternative procedure for Commissioner statements: "Commissioners are urged to refer statements they and their staffs make to appropriate Offices/Directorates for technical, program and legal review." Directive 1450.2 ¶ 7(g)(1). Thus, while CPSC's procedures "urge[]" Commissioners to submit their statements to "appropriate" agency offices for review, it does not *require* them to do so. As such, Commissioner Trumka would not have violated CPSC procedures even if, as Nested Bean alleges, his statements did not undergo a clearance review.

Finally, Nested Bean erroneously alleges that Commissioner Trumka's statements violated 15 U.S.C. § 2055(b)(1) because they enabled "the public [to] readily . . . ascertain Nested Bean's identity, without providing [the company with] advance notice and [an] opportunity . . . to respond." Am. Compl. ¶ 222; *see id.* ¶ 224. This statute applies only when the public can readily ascertain the identity of a manufacturer from "the manner in which [a] consumer product is to be designated or described" in information "public[ly] disclos[ed]" by a Commissioner. 15 U.S.C. § 2055(b)(1). Fatally, Nested Bean does not allege that former Commissioner Trumka's statements *themselves* referenced Nested Bean or its products, only that his statements "cited" to a Washington Post article, which in turn mentioned Nested Bean. Am. Compl. ¶¶ 110, 112, 115, 127.

CPSC's regulations confirm that 15 U.S.C. § 2055(b)(1) "appl[ies] only when a reasonable person receiving the information in the form in which it is to be disclosed and lacking specialized expertise can readily ascertain *from the information itself* the identity of the manufacturer." 16 C.F.R. § 1101.13 (emphasis added). And CPSC "staff

26

will not . . . customarily perform research or look beyond the face of the document to determine whether the identity of a manufacturer can be ascertained." 48 Fed. Reg. 57,406, 57,409 (Dec. 29, 1983). Nested Bean does not allege that its identity was ascertainable from "the face of" Commissioner Trumka's statements. Accordingly, Count VI should be dismissed because Commissioner Trumka did not violate 15 U.S.C. § 2055(b)(1), and "any error was not plainly contrary to a specific, clear, and mandatory statutory prohibition." *Dreamland*, 2025 WL 2758476, at *11.

## IV.    Counts II and VII do not assert legally cognizable causes of action

Counts II and VII purport to bring claims directly under 15 U.S.C. § 2055(b)(1) and (6) against CPSC and former Commissioner Trumka. Am. Compl. ¶¶ 169, 230. "To sue in federal court," however, "a plaintiff must have both constitutional standing and a cause of action." *United States v. Hallinan*, 75 F.4th 148, 151 (3d Cir. 2023) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-28 (2014)). Courts use "traditional tools of statutory interpretation" to determine whether a statute creates a cause of action. *Id.* at 151 (quoting in part *Lexmark*, 572 U.S. at 127).

The CPSA's judicial review provisions concern challenges to specific types of agency action, such as consumer product safety rules and standards. *See* 15 U.S.C. § 2060(a), (g). None of them applies here. The existence of the CPSA's "express" review provisions indicates that "Congress did not intend to create" any other "implied" cause of action through the statute. *In re All Terrain Vehicle Litig.*, 979 F.2d 755, 757 (9th Cir. 1992) (per curiam) (holding that the CPSA does not afford "a private right of action for

violations of the Act itself"). Moreover, neither 15 U.S.C. § 2055(b)(1) nor (6) defines "a

cause of action's elements." *Hallinan*, 75 F.4th at 151.

The case on which Nested Bean relies, *Devillier v. Texas*, 601 U.S. 285 (2024), *see*

Am. Compl. ¶ 169, further illustrates why Counts II and VII fail. In *Devillier*, the

Supreme Court noted that the Takings Clause is "self-executing" because it expressly

affords property owners a right to "just compensation." 601 U.S. at 291 (citation

omitted). But establishing that right is distinct from the "question regarding the

procedural vehicle by which a property owner may seek to vindicate th[e] right." *Id.*

Similarly, 15 U.S.C. § 2055(b)(1) and (b)(6) might be relevant to the "substantive rule of

decision," 601 U.S. at 292, but the APA provides the only cause of action. Therefore,

Counts II and VII do not assert cognizable causes of action, and they should be

dismissed.

## V.    Count X fails for lack of subject-matter jurisdiction and a plausible due process violation

Count X asserts a due process claim because former Commissioner Trumka "has

strong negative opinions [about] 'weighted' products . . . and is incapable of neutral

unbiased actions concerning these products in the future." Am. Compl. ¶¶ 258-77.

Nested Bean lacks standing to "press" this claim because it has not plausibly alleged

any injury in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). It offers only

speculation about "actions concerning [weighted infant sleep] products in the future."

Am. Compl. ¶ 277. But "threatened injury must be *certainly impending* to constitute

injury in fact," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), and Nested Bean's

"risk of future harm" from bias is "virtually nonexistent" because Commissioner

Trumka "no longer serves as a Commissioner," *Dreamland*, 2025 WL 2758476, at *11.

Nested Bean's due process claim also does not survive Rule 12(b)(6). Glaringly,

Nested Bean does not allege that it is being deprived, or will imminently be deprived, of

"life, liberty, or property" without due process. U.S. Const. amend. V; *see* Am. Compl.

¶¶ 258-77. Plus, there was no "particular case" before Commissioner Trumka when he

issued his statements and, given his removal, there will not be one in the future. *Metro.*

*Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1164-65 (D.C. Cir. 1995). Count X

should be dismissed.

## VI.    Count XI does not allege the CPSA's removal protections harmed Nested Bean

Count XI asserts that the for-cause removal protection for Commissioners in

15 U.S.C. § 2053(a) violates the separation of powers. Am. Compl. ¶¶ 278-86. However,

Nested Bean "lacks standing" to seek prospective relief because "the Supreme Court's

decision to allow the Commissioners to be removed" demonstrates that "the for-cause

provision clearly serves as no impediment to removal." *Dreamland*, 2025 WL 2758476, at

*12. Retrospective relief is also off the table because Nested Bean does not even *attempt*

to show that the "removal provisions actually impacted, or will impact, the actions

taken by the CPSC against it." *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757 (10th Cir. 2024),

*cert denied*, 145 S. Ct. 1047 (2025). All the relevant events—CPSC's safe sleep guidance,

Commissioner Trumka's statements, and the Commission's vote on retraction—

"occurred during the Biden presidency," *Dreamland*, 2025 WL 2758476, at *12, and

Nested Bean does not contend that President Biden wanted to but could not remove any Commissioner. Therefore, Count XI should be dismissed.

CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim.

Dated: December 19, 2025

Respectfully submitted,

| | |
|---|---|
| BENJAMIN L. WALLACE<br>United States Attorney | BRETT A. SHUMATE<br>Assistant Attorney General |
| */s/ Claudia L. Pare*<br>CLAUDIA L. PARE<br>Assistant United States Attorney<br>Office of the United States Attorney<br>District of Delaware<br>U.S. Attorney's Office<br>1313 N. Market Street<br>Wilmington, DE 19801<br>(302) 573-6277<br>claudia.pare@usdoj.gov | JAMES W. HARLOW<br>Acting Assistant Director<br><br>*/s/ David H. Hixson*<br>DAVID H. HIXSON (Ill. Bar No. 6289751)<br>ISAAC C. BELFER (D.C. Bar No. 1014909)<br>Trial Attorneys<br>Federal Programs Branch<br>Civil Division<br>U.S. Department of Justice<br>1100 L Street, NW<br>Washington, DC 20005<br>(202) 449-8070 (Hixson)<br>(202) 305-7134 (Belfer)<br>(202) 514-8742 (fax)<br>David.H.Hixson@usdoj.gov<br>Isaac.C.Belfer@usdoj.gov<br><br>*Counsel for Defendants* |